B. F. HAAG *et al.* V. SARAH J. BAKER.

No. 15,577.    (97 Pac. 473.)

SYLLABUS BY THE COURT.

1. MORTGAGES—*Foreclosure—Purchase by a Lien-holder—Constructive Trust.* Where a tract of land is encumbered by four mortgages to separate mortgagees, and the holder of the first mortgage brings a suit, to which all are made parties, and therein obtains a decree of foreclosure and order of sale barring all subsequent lien-holders, and where thereafter the holders of the third and fourth liens assign their mortgages to the holder of the second lien to procure a stay of the sale and arrange for the payment of the judgment, and the second lien-holder makes the contemplated arrangement in good faith and pays a part of the judgment, but fails, without fault on her part, but through inability, to complete the payment, and the holder of the first lien proceeds to sell the land under the judgment, and the holder of the second mortgage, in fair competition, buys the land at the master's sale and receives a master's deed therefor upon the confirmation of the sale, *held*, that by such sale the holders of the third and fourth liens are devested of all their interest in the land and the relation of trustee and *cestui que trust* does not exist between the purchaser and such former lien-holders.

2. ——— *Rights of Mortgagor.* Where, in such a case, the original owner and mortgagor of the land has, prior to the commencement of the foreclosure suit, made a deed of the land to the holders of the second and third liens, which deed is really a mortgage to secure his indebtedness, his rights to the land are also foreclosed by the suit, he being a party thereto, and he is not entitled to an accounting in an action to recover the stipulated rent by the purchaser, from whom he has rented the land after the sale.

Error from Lyon district court; FREDERICK A. MECKEL, judge. Opinion filed July 3, 1908. Affirmed. Opinion denying a petition for a rehearing filed October 10, 1908.

STATEMENT.

THE findings of fact made by the trial court are as follow:

"(1) The plaintiff and all the defendants sustain the relation of brothers and sisters to each other, except

Sue H. Haag, who is the wife of B. F. Haag; all of them are the children and heirs at law of Margaret Haag, deceased; John Haag, one of the defendants, is the duly qualified and acting executor of the estate of said Margaret Haag, deceased.

"(2) On and prior to June 23, 1894, the defendant B. F. Haag was the owner of the land in controversy, consisting of 786⅔ acres of land in sections 15 and 21, township 17, range 12, in Lyon county, Kansas.

"(3) At that time said land was encumbered by mortgages as follow: (a) Northwestern Life Insurance Company, $6000; (b) Sarah J. Baker (principal and part int.), $2500; (c) John Haag (principal and part int.), $1300; (d) estate of Margaret Haag (principal and part int.), $3000. All of said mortgages were executed by said B. F. Haag and his wife, and on July 1, 1894, amounted in the aggregate, principal and interest, to the sum of $13,000.

"(4) On June 23, 1894, said B. F. Haag and his wife executed a certain warranty deed, conveying to said Sarah J. Baker and John Haag all of said land, and said grantors caused said deed to be recorded in the office of the register of deeds of Lyon county, Kansas, on the same day. Said deed was in the ordinary and usual form of warranty deeds, containing the usual covenants, and was without reservation or exception of any kind, except that it was made subject to the mortgages then upon said land.

"B. F. Haag and his wife, together with their family, were at that time, and had been for nearly ten years prior thereto, residing upon said land and occupying the same as their family homestead. The grantees therein named, said Sarah J. Baker and said John Haag, were at that time, and for years before had been, residents of the state of Pennsylvania, and neither of them had any knowledge or notice of any kind of the making of said deed until several days thereafter, when said Sarah J. Baker came to the state of Kansas.

"(5) Said B. F. Haag and his wife executed said deed voluntarily and of their own free will and accord, and not because of any inducement or pressure brought to bear upon them by said grantees or either of them. It is alleged to have been made for the purpose of making said grantees preferred creditors of said B. F. Haag, but I find from the evidence of said B. F. Haag that it was also made by him for the purpose of pre-

venting his other creditors, whom he owed at that time to the amount of about $1500, from obtaining judgment liens upon any of said land. I further find that all of said creditors were afterward paid in full by said B. F. Haag, but when they were paid has not been shown.

"(6) On June 23, 1894, an action was pending in the United States circuit court for the district of Kansas, wherein the said Northwestern Life Insurance Company was suing the said B. F. Haag upon the mortgage held by it upon said land. The said Sarah J. Baker and said John Haag were parties defendant in said suit, and both of them had been notified of the pendency thereof by the attorneys for said insurance company, and they were requested to enter their appearance in said suit and were advised to file cross-bills therein setting forth their interest under the mortgages by them held at that time.

"(7) At that time the mortgage of said Northwestern Life Insurance Company was a first lien upon all of said land; the mortgage of Sarah J. Baker was a second lien upon all of said land, subject only to the mortgage of said insurance company; and the mortgage of said John Haag and the one of the estate of Margaret Haag, deceased, were subject to the insurance company and Sarah J. Baker mortgages.

"(8) The financial troubles and difficulties of said B. F. Haag had been discussed by the other brothers and sisters to such an extent that at said time, to wit, in June, 1894, and for a long time before that time, they regarded him as hopelessly insolvent, and none of them was willing to advance any more money to him. On June 22, 1894, the defendant John Haag, knowing that said Sarah J. Baker was going to Kansas to protect her interests in said property, gave to her his mortgage and the mortgage owned by the Margaret Haag estate for the purpose of having cross-bills filed in said suit then pending in court, and said Sarah J. Baker at that time executed a receipt therefor, a copy of which is attached to John Haag's amended answer as an exhibit and marked 'A.'

"(9) On June 25, 1894, said Sarah J. Baker arrived in Kansas from her home in Pennsylvania, and then for the first time learned that said B. F. Haag and his wife had conveyed the title of all of said land to her and to John Haag. Mrs. Baker then concluded not to

file cross-bills in said suit, but to endeavor to make some arrangement with the Northwestern Life Insurance Company for a new loan upon said land or for an extension of the one then upon said land and which said insurance company ·was then seeking to recover. With that object in view she obtained from said John Haag a quitclaim deed of all his title in all of said land, and also assignments of the two mortgages then held by him, that is, his own mortgage and the one belonging to the estate of Margaret Haag, deceased. Said quitclaim deed and said assignments were received by said Sarah J. Baker and duly recorded on July 14, 1894.

"(10) On July 14, 1894, Sarah J. Baker, without consideration, released of record the mortgage to herself and also the mortgages to John Haag and to the estate of Margaret Haag, which had been assigned to her. This was done solely for the purpose of enabling her to handle the property and obtain a loan thereon to satisfy the mortgage of the insurance company.

"(11) On July 14, 1894, Sarah J. Baker executed to said B. F. Haag an instrument in writing, a copy of which is attached to said defendant's answer and cross-petition, marked 'Exhibit A,' providing for the conveyance to said B. F. Haag of all of said lands in the event that said B. F. Haag should, within two years from the date of said instrument, pay all of the indebtedness secured by the mortgages then held by said Sarah J. Baker, and all repairs and taxes thereon and necessary expenses.

"(12) On July 5, 1894, said Sarah J. Baker executed to John Haag an instrument in writing, a copy of which is attached to his answer and cross-petition, marked 'Exhibit III,' providing for the conveyance to said John Haag, at any time within two years from the date of said instrument, of all of said lands, provided the foreclosure proceedings then pending did not devest her of the same, upon full payment to her of all that might then be due to her upon her mortgage and all her necessary and reasonable expenses and all moneys she may have been compelled to pay in protecting said land from the lien of said insurance company's mortgage.

"(13) About October 8, 1894, said insurance company obtained a judgment against the defendant B. F. Haag for $6155.12 debt, and $85.18 costs, and a decree foreclosing its mortgage against all the defendants in

its suit then pending in said United States circuit court.

"(14) About October 18, 1894, the plaintiff entered into a written agreement with said insurance company to stay the sale of said real estate under the foreclosure proceedings for a period of three years from June 1, 1895, in consideration that she would reduce the judgment in said suit to $5000. The plaintiff in compliance therewith paid on said judgment the sum of $1684.35, and thereby reduced the same to $5000. It was also further agreed in said agreement that the sum of $500 should be paid on said judgment at the expiration of one year from the date of said agreement, and $500 in two years thereafter, and that the interest at the rate of six per cent. per annum should be paid each year, payable semiannually, and that the remaining sum of $4000 should be paid at the expiration of said three years. The defendant B. F. Haag was a party to said agreement of extension, and he signed the same about October 15, 1895, and agreed to be bound thereby and consented thereto.

"(15) The money which was required to reduce said insurance company's judgment to $5000 was borrowed by the plaintiff at a bank in Pennsylvania, her brother John Haag signing the note with her as surety, but the plaintiff afterward paid said note out of her own money.

"(16) During the negotiations which finally culminated in the execution of the extension agreement referred to in the fourteenth finding herein said B. F. Haag promised and agreed to pay at least $1000 each year, to be applied in reduction of the debts then owing by him, if Sarah J. Baker would raise the amount of money required to reduce the insurance company's judgment to $5000; B. F. Haag was to pay said sum of at least $1000 each year to Sarah J. Baker so as to enable her to meet the payments each year that were required to be made under the terms of said extension agreement, and whatever sum he should pay over and above the amount required for that purpose was to be applied by her upon his indebtedness to her. Under said agreement said B. F. Haag paid to Mrs. Sarah J. Baker the following sums of money: $300 in October, 1895; $300 in July, 1896, and $310 in January, 1897. All said sums were sent by Mrs. Baker to the insurance company as partial payments upon said extension

agreement; the first two payments were accepted by said insurance company, but the $310 payment was refused by it, and the same was returned by it to Mrs. Baker and by her retained and applied by her upon the indebtedness then owing to her by said B. F. Haag.

"(17) Neither John Haag nor B. F. Haag have ever complied with the conditions contained in the instruments referred to in the eleventh and twelfth findings herein.

"(18) On April 9, 1897, all of said real estate was sold under the insurance company's decree of foreclosure by Albrecht Marburg, special master in chancery, and the same was bid in by Sarah J. Baker for the sum of $5173, the same being the amount of the balance then due on its judgment, with interest and costs. Said sale was duly confirmed by the court, and on April 20, 1897, a master's deed was executed and delivered to her for all of said land. On said day, and after said sale, Mrs. Baker told B. F. Haag that she claimed to be the absolute owner of all of said lands.

"(19) All of said land was reasonably worth, during the years 1894, 1895, 1896 and 1897, the sum of about $13,000.

"(20) In 1897, and after Sarah J. Baker had bought said land at said special master's sale, said B. F. Haag leased all of said lands from her for the sum of $750 in money and his agreement to pay the taxes on all of said land; about a week or ten days later another lease contract for the term of one year was drawn between said parties, whereby said B. F. Haag agreed to pay, as rent for all of said lands, the sum of $850 per annum, Mrs. Baker to pay the taxes herself; that lease was renewed from year to year upon the same terms and conditions, and said B. F. Haag paid to Sarah J. Baker $850 each year up to and including the year 1904. The $850 for 1905 is the original cause of action sued upon in the plaintiff's petition herein; said $850 for 1905 and $850 for 1906 have been deposited with the Admire State Bank, and are held by it to abide the judgment and decree of this suit.

"About the time said second lease contract was prepared Sarah J. Baker told B. F. Haag that if he would promptly pay to her the rent money under said lease and would not put her to any expense in collecting the same that she would give to John Haag the sum of $100 of said rent money. She paid to said John Haag out

of said rent money the sum of about $83; the same was a mere gift, or gratuity, from her to him.

"(21) Mrs. Baker obtained the money necessary to pay for the land at the master's sale by a temporary loan at a bank, and afterward paid off the bank by negotiating for a loan of $5000 on all of said land in controversy in this suit with one Caroline L. Fonda; and on May 14, 1897, Sarah J. Baker executed a mortgage to said Caroline Fonda on all of said land to secure said loan for $5000, and the same is now a first lien upon said land.

"(22) Some time during 1902 B. F. Haag asked Mrs. Baker what she wanted for said land; she told him that if he would pay the debts which he owed to John Haag individually and as executor of the Margaret Haag estate she would deed the land to him in payment to her of the sum of $12,000.

"The foregoing offer was never acted upon, and nothing was ever done by either thereunder.

"(23) The land in controversy is now reasonably worth from $22,000 to $24,000, it having gradually advanced in value since it was sold at said master's sale.

"(24) From the evidence and the inferences to be reasonably drawn therefrom I further find that, in her dealings with John Haag and B. F. Haag, Mrs. Sarah J. Baker acted in good faith and with the desire to aid all of them so far as she could do so; that it was her first purpose to protect her own interests in the property in controversy, and after that to do what she could to protect the interests of John Haag individually, and as executor, therein, as well as to aid B. F. Haag, if possible; that she accomplished all of said purposes by securing the extension agreement referred to and by executing the written instruments to John Haag and to B. F. Haag referred to in the eleventh and twelfth findings herein; that said written instruments to John Haag took the place and stood instead of the mortgage debts theretofore held by him individually and as the executor of the Margaret Haag estate; that none of the defendants aided or offered to aid Sarah J. Baker in raising the money required to obtain said extension agreement; that said John Haag considered the money he had loaned to B. F. Haag, which was secured by mortgage on said land, as lost, and that none of the defendants who were asked to help Mrs. Baker would do so, because they believed nothing could be realized

from said land after paying the first mortgage and the debt due to Mrs. Baker; that Mrs. Baker, in all that she did in and about protecting her interests and the interests of the defendants, was not acting as a trustee for the defendants or any of them, but all that she did in that behalf was merely as a sisterly act and a desire to help them as best she could under the existing circumstances; that all of the defendants knew, or had means of knowing, everything that was done by Mrs. Baker from the time said land was conveyed by B. F. Haag and his wife to John Haag and Mrs. Sarah J. Baker until the commencement of this action, and during all of said time; that none of the defendants ever made any claim of an interest in or to the land in controversy since said master's sale until they made the same in this suit; all of them knew and had means of knowing that Sarah J. Baker claimed to be the owner in fee simple of all of said lands since she bought the same at said master's sale."

The trial court's conclusions of law follow:

"(1) The plaintiff, Sarah J. Baker, is the owner in fee simple of all the land in controversy in this suit.

"(2) None of the defendants have any interest in, or claim or title to or lien upon, any of said land.

"(3) The plaintiff is entitled to have her title to said land quieted as against the claims of each and all of the defendants.

"(4) The defendant B. F. Haag is in possession of said land as the tenant of the plaintiff, and he is justly indebted to her for the rent sued for in this action.

"(5) The plaintiff is entitled to judgment against the defendant B. F. Haag for the sum of $——, with 6 per cent. interest per annum thereon from the —— day of ——, 1905.

"(6) The plaintiff is entitled to judgment against all the defendants for the cost of this suit.

"(7) The plaintiff is entitled to an order upon the Admire State Bank for the money deposited with it as rent for the years 1905 and 1906."

*L. B. Kellogg,* and *J. G. Hutchison,* for plaintiffs in error.

*Hamer & Harris,* for defendant in error.

The opinion of the court was delivered by

Smith, J.: The principal controversy is whether at the time Mrs. Baker bought the land at the master's sale she should be held to have done so as trustee for her brothers and her mother's estate. That she intended to purchase for herself alone can hardly be questioned under the evidence. It is contended that she had originally taken title to the land, with her brother John, as security for a debt owing to her from her brother B. F.; that she had accepted from John an assignment of a mortgage which he personally held against the land, and, also, an assignment of a mortgage from John as administrator of the mother's estate; that such assignments were made for the purpose of enabling her to get an extension of the mortgage to the Northwestern Life Insurance Company; that she released these mortgages of record, together with her own, for that purpose, and procured the extension for the benefit of herself, her brothers and co-heirs. From these facts it is argued that Mrs. Baker became a trustee for her brothers and co-heirs, and could not at her pleasure devest herself of the responsibility, but that all she did thereafter in relation to the land must enure, *pro rata,* to the benefit of herself and those she so represented.

It is true that one occupying any relation of trust or agency to another should not be permitted to manipulate the property or business of such other to his own benefit or to the disadvantage of the other. On the other hand, where, as in this case, one has an interest in a property prior, and in a measure adverse, to the interest of another, and the other, with knowledge of the facts, places his interest in the hands of the one having the prior interest for protection, the ordinary rules governing trustees and *cestuis que trust* do not apply. It is at most a subservient trust or agency. Good faith, to be sure, must be exercised by the agent

in the management of the property or business; but good faith does not in such a case require the relinquishment of the agent's interest therein, nor of his priority.

B. F. Haag owned the land and mortgaged it to the insurance company for $6000, then to Mrs. Baker for $2500, then to John Haag for $1300, then to his mother, or to her estate, for $3000, aggregating practically tne full value of the land. A judgment was about to be rendered against him for several hundred dollars, and voluntarily, for the purpose of avoiding a levy on the land for the judgment, and for the purpose of protecting the interests of his relatives, he deeded the land to Mrs. Baker and his brother John. B. F. Haag afterward paid the judgment, but became unable to pay the interest on even the first mortgage. The insurance company brought a suit against all the parties, and procured a judgment for about $6200 and a decree foreclosing the rights of all the defendants and an order for the sale of the land. Mrs. Baker sought unavailingly the assistance of her brother John and the coheirs of the estate to pay off this judgment. They practically disclaimed any interest in the land or faith in the outcome, although she offered to pay considerable more than her proportionate share of the money. Thereupon John assigned to her the two mortgages held by him, and she released them and her own mortgage of record. Then she borrowed the money and paid upon the judgment of the insurance company a sufficient sum to reduce it to $5000, and secured a contract from the company to stay execution of the remainder for three years, provided certain annual payments were made upon the principal and the interest was paid semiannually. It was evidently still intended to allow her brother B. F. to redeem the land, as he joined with her in the contract with the insurance company for the extension, and he was to make the payments thereunder. He made two payments of interest,

Haag v. Baker.

but failed to meet the first stipulated payment upon the principal. Thereupon the insurance company returned a proffered further payment of interest and proceeded, in accordance with their judgment, to sell the land. Still not one of the parties to this suit raised a hand to assist, but Mrs. Baker borrowed the money, and, we must presume, at a regularly conducted public sale was the highest bidder and became the buyer of the land. Had she not bid thereon the land might have been sold at a lower price and left a deficiency judgment against B. F. Haag. All the rights of all the parties to this action to that land were sold and extinguished by the sale, and all the title Mrs. Baker now holds thereto was acquired by the master's deed. By the findings of the court the land is considered to have been worth more than twice the amount it sold for, but from common knowledge of the public sale of lands at that time it must be said to have been sold at a price more proportionate to the real value than was then common.

The court found that Mrs. Baker in all these matters acted in good faith, and the finding is supported by evidence. B. F. Haag entered into written contracts leasing the land from Mrs. Baker for several years after the sale, and after, as he admits, he was informed by her that she was the sole owner thereof, and only sets up a claim of title and for an accounting when sued for rent. The other claimants remained silent until made defendants to the suit on the application of B. F. Haag. One heir even then disclaimed any interest. These facts are immaterial except as circumstances tending to justify the findings of the court. That the land has greatly increased in value since the master's sale and is now an abundant reward to Mrs. Baker for her valiant efforts to save it is equally immaterial.

The judgment is affirmed.

OPINION DENYING A PETITION FOR A REHEARING.

The opinion of the court was delivered by

SMITH, J.: In the foregoing syllabus and opinion there is a misstatement of facts, as shown by the record. The holders of the third and fourth mortgages assigned to the holder of the second mortgage during the pendency of the suit to foreclose the first mortgage—before, and not after, judgment was rendered therein. The judgment was rendered at the time the contract for a stay thereof was entered into between the insurance company as one party and B. F. Haag and Mrs. Baker as the other. This error in no wise affects the decision, and the motion for a rehearing is denied.